United States District Court
Southern District of Texas
**ENTERED**
March 24, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| MIGUEL SUAREZ, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 1:24-CV-104 |
| § | |
| FELDMAN'S REAL ESTATE, INC., § | |
| § | |
| Defendant. § | |

# ORDER

In July 2024, Plaintiff Miguel Suarez brought suit alleging that Defendant Feldman's Real Estate, Inc. owns and leases a property that fails to comply with the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.* ("ADA"). In his Complaint, he alleges that the parking lot for the Feldman's property violates the ADA due to the lack of "ADA-compliant van-accessible spaces on the shortest access route to the business" and "ADA-required handicapped parking signs." (Complaint, Doc. 1, 2) He requests declaratory and injunctive relief, as well as attorney's fees under the statute as a prevailing party.

It is undisputed that after Suarez filed his lawsuit, Feldman's improved the parking lot in an apparent attempt to remediate the alleged deficiencies. Based on these remediation efforts, Suarez moved for summary judgment. In response, Feldman's argued that its remediation efforts rendered the case moot and stripped Suarez of standing.

A United States Magistrate Judge agreed with Feldman's and recommends that due to the remediation efforts, Suarez can no longer present a case or controversy, requiring the dismissal of his claims for lack of standing. (R&R, Doc. 22)

Suarez timely filed Objections (Doc. 23) to the Report and Recommendation. As a result, the Court reviews the portions of the Report and Recommendation to which Suarez objects *de novo* and all other portions for clear error. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3).

**I.**

Suarez objects to the statements within the Report and Recommendation indicating that Feldman's remediation efforts, taken after Suarez filed his lawsuit, rendered the property ADA-compliant. On this point, Suarez contends that the "remediation efforts were not done properly, therefore [Feldman's] property is still not in compliance with the ADA." (Objs., Doc. 23, 4–5) He seeks a permanent injunction for a "correct and proper remediation of the property." (Objs., Doc. 23, 8)

Based on the doctrine of judicial estoppel, however, the Court concludes that Suarez cannot object to the Report and Recommendation based on the argument that the remediation efforts by Feldman's did not render the property fully compliant with the ADA. The resolution of this objection requires consideration of the procedural history.

In December 2024, Suarez filed a Motion for Summary Judgment, based on the admission by Feldman's of its non-compliance with the ADA. (Motion, Doc. 18) In his motion, Suarez represented that Feldman's had performed "[r]emediations of signs and restriping" on the parking lot, and that as a result of those measures, "[t]he property and business were brought into compliance after the instant case was filed." (Motion, Doc. 18, 4) He further stated that the "only substantive issue that remains is that Plaintiff seeks a permanent injunction to make sure the property *remains* ADA-compliant." (Motion, Doc. 18, 4 (emphasis added))

In response, Feldman's not only acknowledged its remediation efforts, but relied on them to argue that as a result of those measures, Suarez could no longer "show that a favorable decision by this Court will redress the injury since the parking lot complained of has been remedied." (Resp., Doc. 20, 5 (referencing Suarez's Motion for Summary Judgment, which included "pictures of Defendant's existing parking lot with ADA compliant signage, parking spaces, and ramp

accessibility")) Thus, Feldman's argued, Suarez no longer possessed standing, depriving the court of subject matter jurisdiction.[1]

Based on Suarez's position in his Motion, the Magistrate Judge found that Suarez no longer possessed standing, as Feldman's remediation had rendered injunctive relief unnecessary because the parties agreed the parking lot was ADA-compliant. (R&R, Doc. 22, 7)

In his Objections to the Report and Recommendation, Suarez now changes course, contending that Feldman's property continues to violate the ADA because the "restriping was not performed correctly or properly" and the "handicapped parking space added to Defendant's property is not located on the shortest accessible route to the accessible entrance." (Objs., Doc. 23, 5)  Based on the doctrine of judicial estoppel, however, the Court rejects Suarez's change in position.

Courts can invoke the doctrine of judicial estoppel "to prevent a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012).  The doctrine applies "particularly in situations where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *In re Oparaji*, 698 F.3d 231, 235 (5th Cir. 2012) (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)); *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 386 (5th Cir. 2008)).  "The purpose of the doctrine is 'to protect the integrity of the judicial process,' by 'prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self interest.'" *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).

Courts evaluate the following factors when deciding whether to apply judicial estoppel:

---

[1] Suarez filed an untimely Reply (Doc. 21), which the Magistrate Judge did not consider. (R&R, Doc. 22, 5)  However, even if the Court took account of the late filing, Suarez reconfirms his position that the post-lawsuit actions by Feldman's rendered the parking lot ADA-compliant. (*See* Reply, Doc. 21, 7 (arguing that he seeks "a permanent injunction to make sure the Defendant's property *remains* in compliance and that the remedial measures and signs don't mysteriously 'go missing' or 'disappear.'" (emphasis added)))

3 / 8

"(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Love*, 677 F.3d at 261. As to the second factor, "judicial acceptance does not require a formal judgment; rather, it only requires that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Allen v. C&H Distributors, L.L.C.*, 813 F.3d 566, 573 (5th Cir. 2015) (internal quotation marks omitted); *see also NGM Ins. Co. v. Bexar Cnty., Texas*, 211 F. Supp. 3d 923, 934 (W.D. Tex. 2016) (concluding that a magistrate judge's report and recommendation constituted judicial acceptance).

In the present case, Suarez's litigation conduct satisfies these factors. In his Motion for Summary Judgment, Suarez represented that Feldman's had implemented remediation efforts that brought the property into ADA compliance. Suarez based his motion on these efforts, unambiguously representing that the "only" remaining issue concerned his request for a permanent injunction "to make sure the property *remains* ADA-compliant." (Motion, Doc. 18, 4 (emphasis added)) Now, Suarez argues that Feldman's did not properly remediate the property. Those two positions are plainly inconsistent.

The Magistrate Judge accepted and relied on the position that Suarez presented in his Motion for Summary Judgment. In particular, the Magistrate Judge bases the Report and Recommendation primarily on the "undisputed" fact that the parking lot was "now ADA compliant." (R&R, Doc. 22, 7) The recommendation–i.e., that the Court dismiss the lawsuit because no case or controversy exists, given the successful remediation of the property–rests on the position that Suarez advanced.

Lastly, the record demonstrates that Suarez did not act inadvertently when he represented that Feldman's remediation efforts had rendered the property ADA-compliant. He took this position unambiguously in his Motion for Summary Judgment, and then again in his late-filed

Reply. (*See, e.g.*, Motion, Doc. 18, 4; Reply, Doc. 21, 7)  Even though the Magistrate Court did not consider the Reply in connection with the Report and Recommendation, this Court considers Suarez's representations in that Reply for purposes of determining whether Suarez took positions inadvertently.  He did not.

Having considered these factors, the Court concludes that the doctrine of judicial estoppel applies and precludes Suarez from now arguing that Feldman's remediation efforts did not render the property at issue ADA-compliant.  As a result, the Court rejects any objection based on the position that the property continues to violate the ADA and that further proceedings are required to determine whether to issue a permanent injunction ordering the remediation of the property.

**II.**

Suarez also objects to the Report and Recommendation on the grounds that Feldman's remediation efforts, even if sufficient to render the property ADA-compliant, did not warrant dismissal, as Suarez "continues to seek a permanent injunction to make sure the property <u>remains</u> ADA-compliant." (Objs., Doc. 23, 9 (emphasis in original))  He argues that absent a permanent injunction, "there is nothing to assure the Plaintiff that the remediations will not be abandoned at some point in the future" or that "the handicapped signs will be removed or the parking lot repainted." (Objs., Doc. 23, 10)

Suarez's objection invokes the doctrine of voluntary cessation, which is an exception to the doctrine of mootness.  "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).  This principle recognizes that "[a] defendant, without court compulsion, could legally return to its former ways." *K.P. v. LeBlanc*, 627 F.3d 115, 121 (5th Cir. 2010).  Under this doctrine, the voluntary cessation of wrongful conduct will render a claim moot only when no reasonable expectation exists that the defendant will resume the wrongful conduct upon securing dismissal of the lawsuit. *See Lewis v.*

*United States*, 88 F.4th 1073, 1078 (5th Cir. 2023) (quoting W. *Virginia v. Env't Prot. Agency*, 597 U.S. 697, 700 (2022)). The analysis depends upon an evaluation of the risk that the defendant's voluntary cessation represents mere "litigation posturing" engaged in to avoid judicial review. *See Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018); *Aladdin's Castle*, 455 U.S. at 289 n.10. Thus, when a party contends that its voluntary cessation of the wrongful conduct renders the case moot, that party bears the burden to demonstrate that the wrongful conduct cannot "reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

Applying these principles to the record in this case, the Court finds that Feldman's has demonstrated that the wrongful conduct–i.e., the property not complying with the ADA–is not reasonably expected to recur. The parties agree that Feldman's resurfaced and restriped the parking lot and installed an access ramp.² These remediation efforts constitute significant structural changes that required the expenditure of resources. The record contains no evidence suggesting that Feldman's would expend additional resources to remove the access ramp or restripe the parking lot again to remove the disabled parking spot. In similar circumstances, other district courts have concluded that no reasonable expectation existed that the property owner would undo similar types of structural modifications. *See, e.g.*, *Juluke v. Sunnyland Properties Ltd.*, No. 3:21-CV-2900-E, 2024 WL 734644, at *7 (N.D. Tex. Feb. 2, 2024), *report and recommendation adopted*, No. 3:21-CV-2900-E, 2024 WL 733636 (N.D. Tex. Feb. 21, 2024) (concluding that the defendant's voluntary compliance with the ADA during the litigation mooted the case; "suggestion that Defendant might revert to non-compliance is illogical, however, because doing so would actually cost Defendant more than maintaining compliance") (quoting *Smith v. Alsid*, No. 3:21-CV-111-SA-RP, 2022 WL 9496386, at *4 (N.D. Miss. Oct. 14, 2022)); *Smith v. Stateline Rd. W. Ctr., LLC*, No. 3:21-CV-62-NBB-JMV, 2022 WL 4543181, at *5 (N.D. Miss. Sept.

---

² Suarez now contends the remediation proved unsuccessful, but he does not dispute that Feldman's modified the property.

28, 2022) (finding it unlikely that the defendant, after expending "considerable resources" to make its facility ADA compliant, would remove those improvements after the dismissal of the lawsuit). The same logic applies here. The Court concludes that Feldman's is unlikely to re-engage in wrongful behavior by modifying its property so as to render it non-ADA compliant. As a result, the voluntary cessation doctrine does not apply, while the doctrine of mootness does.

### III.

Suarez also objects to the Report and Recommendation on the grounds that he should receive attorney's fees and costs as a prevailing party. (Objs., Doc. 23, 4) The Court also disagrees with Suarez on this issue.

Under the ADA, a court, "in its discretion, may allow the prevailing party" to recover attorney's fees, litigation expenses, and costs. 42 U.S.C. § 12205. To qualify as a "prevailing party," a plaintiff must "make three interrelated showings: '(1) the plaintiff must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered.'" *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 576 (5th Cir. 2018) (quoting *Davis v. Abbott*, 781 F.3d 207, 214 (5th Cir. 2015)). However, a defendant's voluntary change, after the plaintiff files a lawsuit, does not represent "judicially-sanctioned relief" that satisfies the first prong of the prevailing-party test. *See Davis v. Abbott*, 781 F.3d at 214 (citing *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 604 n.7, 605 (2001) (rejecting the catalyst theory, which permitted a plaintiff to obtain attorney's fees if the plaintiff secured the relief sought and could demonstrate that the lawsuit itself caused the defendant to alter its conduct)).

In the present case, Suarez has not demonstrated that he is a prevailing party. In his Objections, Suarez's counsel devotes considerable time responding to alleged characterizations of his litigation conduct by defense counsel. But he does not explain why Suarez satisfies the test for

a prevailing party based on Feldman's voluntary remediation of the property after Suarez filed his lawsuit. At most, he argues that denying him attorney's fees and costs would "reward[ ]" Feldman's and that doing so "is not equitable." (Objs., Doc. 23, ¶ 3.03) This argument, however, falls short of satisfying the controlling test for a prevailing party.

### IV.

For these reasons, and finding no clear error as to any portions of the Report and Recommendation to which Suarez did not object, the Court concludes that Suarez is not entitled to the relief that he requests. As a result, the Court **OVERRULES** Suarez's objections and **ADOPTS** the Report and Recommendation (Doc. 22). It is:

**ORDERED** that Plaintiff Miguel Suarez's causes of actions are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction; and

**ORDERED** that Plaintiff Miguel Suarez's Motion for Summary Judgment (Doc. 18) is **DENIED**.

This is a final and appealable order.

Each party shall be responsible for its own fees and costs.

The Clerk of Court is directed to close this matter.

Signed on March 24, 2025.

_____
Fernando Rodriguez, Jr.
United States District Judge